IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JACQUE L. ZIRTMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C11-2071<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Zirtman's Education and Employment Background . . . . . . . . . . . 5
     B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . 5
          1.   Zirtman's Testimony . . . . . . . . . . . . . . . . . . . . . 5
          2.   Vocational Expert Testimony . . . . . . . . . . . . . . . . . 6
     C.   Zirtman's Medical History . . . . . . . . . . . . . . . . . . . . . . 7

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 11
     A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . 11
     B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . 13
          1.   Dr. Stenberg's Opinions . . . . . . . . . . . . . . . . . . . 14
          2.   Book's Opinions . . . . . . . . . . . . . . . . . . . . . . . 18
          3.   Consideration of Obesity . . . . . . . . . . . . . . . . . . . 20
          4.   RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . 22

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Jacque L. Zirtman on November 13, 2011, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Zirtman asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Zirtman requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On January 26, 2009, Zirtman applied for disability insurance benefits.[1] In her application, Zirtman alleged an inability to work since March 1, 2004 due to diabetes, hearing loss, bipolar disorder, depression, and post-traumatic stress disorder.[2] Zirtman's application was denied on June 30, 2009. On September 29, 2009, her application was denied on reconsideration. On October 30, 2009, Zirtman requested an administrative hearing before an Administrative Law Judge ("ALJ"). On December 28, 2010, Zirtman appeared via video conference with her attorney before ALJ Julie K. Bruntz for an administrative hearing. Zirtman and vocational expert Carma Mitchell testified at the hearing. In a decision dated January 12, 2011, the ALJ denied Zirtman's claims. The ALJ determined that Zirtman was not disabled and not entitled to disability insurance

---

[1] On the same date, Zirtman also applied for Title XVI Supplemental Security Income ("SSI") benefits. However, the record contains no further information regarding that application. While Zirtman discusses her application for SSI benefits in her brief, the ALJ's decision under review by this Court only considered Zirtman's application for Title II disability insurance benefits. Similarly, the Social Security Appeals Council, Commissioner's Brief, and Zirtman's own Complaint only refer to a review of the denial of disability insurance benefits. Therefore, it appears that Zirtman's discussion of SSI benefits at the beginning of her brief was in error. Accordingly, for purposes of this appeal, the Court will only consider Zirtman's denial of disability insurance benefits.

[2] At the administrative hearing, Zirtman amended her disability onset date to July 1, 2008. *See* Administrative Record at 11; *see also* Zirtman's Brief (docket number 8) at 1; Commissioner's Brief (docket number 9) at 3.

benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Zirtman appealed the ALJ's decision. On September, 13, 2011, the Appeals Council denied Zirtman's request for review. Consequently, the ALJ's January 12, 2011 decision was adopted as the Commissioner's final decision.

On November 13, 2011, Zirtman filed this action for judicial review. The Commissioner filed an Answer on March 12, 2012. On April 12, 2012, Zirtman filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. On June 6, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 18, 2012, Zirtman filed a reply brief. On March 6, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind

would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have

also supported a contrary outcome, or because we would have decided differently.");
*Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to
support the Commissioner's conclusion, we may not reverse even though there may also
be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d
922, 928 (8th Cir. 2005).").

## IV. FACT

### A. Zirtman's Education and Employment Background

Zirtman was born in 1956. She is a high school graduate. At one time, she was
also a licensed insurance agent, real estate agent, and real estate broker. The record
contains a detailed earnings report for Zirtman. The report covers the time period of 1972
to 2010. Prior to 1975, in any given year, Zirtman earned less than $200. From 1975 to
1982, she earned between $242.16 (1982) and $10,275.26 (1978). She had no earnings
from 1983 to 1992. From 1993 to 2008, she earned between $156.67 (2008) and
$20,777.00 (1994). She has no earnings since 2009.

### B. Administrative Hearing Testimony

#### 1. Zirtman's Testimony

At the administrative hearing, Zirtman's attorney asked Zirtman why she believed
she was no longer able to perform full-time work. Zirtman responded that her difficulties
started in 2004 when she had kidney problems, and needed extra break time during an
eight-hour day. Zirtman also stated that she had difficulties with short-term memory due
to "fibro fog." Additionally, Zirtman claimed that she suffers from regular fibromyalgia
symptoms, including pain in her legs and arms. Zirtman further testified that she rests half
of the day so that she has enough energy in the evening to spend time with her husband and
help out around the house. Specifically, Zirtman stated that sleep "helps me regroup so
that I can be functioning and be with [my husband]. Sometimes I'm able to cook.
Sometimes I'm not. . . . But [my husband] does the mother load of loading the dishwasher

5

and cooking because I just can't do it."[3]  Additionally, Zirtman indicated that she has difficulty standing for long periods of time due to low back pain.  She uses a cane when walking to avoid falling down.  Zirtman also indicated that she suffers from some emotional problems.  Specifically, Zirtman stated that she has difficulties with bipolar disorder.  Lastly, she stated that she suffers from post-traumatic stress disorder ("PTSD") due to "abuse" from family members and her ex-husband.

### 2.  *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who could:

> occasionally lift and carry twenty pounds and frequently lift and carry ten pounds.  She could stand or walk for six hours in an eight-hour work day and sit for six hours in an eight-hour work day.  This individual's ability to push and pull including the operation of hand and/or foot controls is unlimited other than for the weights defined above.  This individual could occasionally climb ramps and stairs, she could balance, stoop, kneel, crouch and crawl.  She could not climb ladders, ropes or scaffolding. . . .

> [T]his individual would be limited to only simple, routine, repetitive work to mildly complex work, [and] could have brief superficial contact with the public, coworkers and supervisors[.]

(Administrative Record at 55-56.)  The vocational expert testified that under such limitations, Zirtman could not perform her past relevant work.  The vocational expert further testified that Zirtman could perform the following work:  (1) office helper (1,800 positions in Iowa and 174,000 positions in the nation), (2) marker (2,000 positions in Iowa and 186,000 positions in the nation), and (3) collator (500 positions in Iowa and 55,000 positions in the nation).  The ALJ provided the vocational expert with an additional hypothetical for an individual who is capable of:

---

[3] Administrative Record at 37.

low stress jobs, she could sit for thirty minutes at a time for a total of six hours in an eight-hour day, she could stand for ten minutes at a time for a total of less than two hours in an eight-hour day. She would need a job that would permit shifting positions at will from sitting or standing. She would also need to take breaks about every -- breaks of five minutes about every twenty minutes. She could lift a maximum of ten pounds occasionally and frequently. She could occasionally look down, turn her head to the left or right, look up and could frequently hold her head in a static position. This individual could rarely twist, crouch, squat. And she would miss four or more days of work per month.

(Administrative Record at 56-57.) The vocational expert testified that under such limitations, Zirtman would be precluded from full-time competitive work.

## C. Zirtman's Medical History

On October 6, 2008, Zirtman voluntarily presented at Backbone Area Counseling Center in Manchester, Iowa, feeling "down and very tired." At Backbone, Zirtman met with Angela Wicks, LMHC. Upon interviewing Zirtman, Wicks summarized her presenting problems as follows:

Zirtman presents . . . with interpersonal issues, depressive symptomatology, manic type symptomatology, past history of sexual abuse and emotional abuse. . . .

As stated earlier in the psychosocial and behavioral functioning, [Zirtman] is experiencing many symptoms of post traumatic stress disorder and bipolar depression as well as interpersonal relational issues with family members.

(Administrative Record at 433.) Wicks diagnosed Zirtman with Bipolar II disorder and PTSD. In her treatment notes, Wicks also wanted to "rule out" borderline personality disorder as a diagnosis. Additionally, Wicks noted that Zirtman's stressors included interpersonal relational issues with her children, financial stressors, environmental

stressors, and lack of social support. Lastly, Wicks assessed a GAF score of 51 for Zirtman.[4] Wicks recommended bi-monthly counseling and medication as treatment.

On December 10, 2008, Zirtman was referred to Dr. Alan Whitters, M.D., for evaluation of her bipolar disorder. Dr. Whitters summarized Zirtman's mental health history as follows:

> [Zirtman] has a long history of mood instability, which created significant problems in terms of her ability to work. She has had a variety of counseling and previous psychiatric treatment[.] . . . She describes ongoing difficulty with mood instability primarily manifested by depression. She does have some distractability, insomnia, grandiosity, flight of ideas, hyperactivity, pushed speech and reckless behaviors, but generally she has manifestations of depression, frustration and appetite change. She has fatigue, poor concentration, some helplessness and hopelessness. A lot of problems associated with post traumatic stress issues associated both with issues growing up especially with her mother and also with her first husband.

(Administrative Record at 427.) Upon examination, Dr. Whitters diagnosed Zirtman with bipolar affective disorder, type II, and PTSD. Dr. Whitters assessed a GAF score of 50 for Zirtman. Dr. Whitters recommended psychotherapy as treatment.

On April 22, 2009, Dr. Jennifer Ryan, Ph.D., reviewed Zirtman's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Zirtman. On the Psychiatric Review Technique asessment, Dr. Ryan diagnosed Zirtman with Bipolar II disorder and PTSD. Dr. Ryan determined that Zirtman had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.

---

[4] A GAF (Global Assessment of Functioning) score is a numeric scale ranging from 0 to 100 which is used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental health. *See Pate-Fires v. Astrue*, 564 F.3d 935, 937, n.1 (8th Cir. 2009) (citing Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Am. Psychiatric Ass'n 1994)) (discussing GAF scores).

On the mental RFC assessment, Dr. Ryan determined that Zirtman was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Ryan concluded that:

> Evidence in the file supports some limitations with respect to sustain[ing] attention and concentration for extended periods due to anxiety and mood disorder symptoms, with [Zirtman] demonstrating the ability to sustain for simple tasks. Evidence in the file is consistent with moderate interpersonal limitations associated with mental health symptoms, with [Zirtman] able to sustain brief appropriate interaction. There are no major credibility or consistency issues. The preponderance of the evidence in the file supports the assertion that [Zirtman] is able to follow simple to mildly complex instructions and perform work tasks consistent with this ability.

(Administrative Record at 439.)

On May 26, 2009, Zirtman met with Dr. Michael Stenberg, M.D., for a physical evaluation. In his report, Dr. Stenberg noted that on a typical day, Zirtman gets up at 6:30 a.m., plays with her dogs, takes her medicine, and then spends 8-10 hours on the computer. Dr. Stenberg also noted that Zirtman's sleep was good, though she does use a CPAP machine for obstructive sleep apnea. Upon examination, Dr. Stenberg diagnosed Zirtman with psychiatric disease, morbid obesity, hypertension, and diabetes. Dr. Stenberg concluded that:

> In my clinical opinion, Ms. Zirtman is impaired, however, her impairment appears to be psychiatric and not physical. By history, the most she can lift and carry with her right arm is 8-10 pounds on an infrequent basis. I would recommend that she be limited to doing that. However, she reports no impairment in her ability to type on a computer or do other fine motor activities. By history, she would only be able to stand for 5 or 10 minutes. However, during the exam she was standing and walking about the examining room 15 minutes.

She reports she can sit through a feature-length movie, and therefore, it is my clinical opinion she would have no difficulty sitting through an 8-hour workday given appropriate work breaks. I would recommend because of her morbid obesity that she have no occupation that requires her to stoop, squat, kneel, crawl, or climb. . . . I could find no objective evidence today that she has any impairment in her ability to hear, speak, or manipulate objects with her hands.

(Administrative Record at 455.)

On June 10, 2009, Dr. Laura Griffith, D.O., reviewed Zirtman's medical records and provided DDS with a physical RFC assessment for Zirtman. Dr. Griffith determined that Zirtman could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Zirtman could occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations.

On September 1, 2009, Catherine Book, PA-C, a treating source, filled out a Physical Residual Functional Capacity Questionnaire for Zirtman, provided to her by Zirtman's attorney. Book diagnosed Zirtman with generalized anxiety disorder, bipolar disorder, borderline personality disorder, hypertension, obstructive sleep apnea, and adverse effects from childhood sexual and emotional abuse. Book opined that Zirtman's prognosis was poor. Specifically, Book stated that "I see little chance of change in her psychological condition."[5] Book set forth Zirtman's symptoms as anxiety, difficulty working with others, depression, back pain, and fatigue. Book opined that Zirtman was incapable of "even low stress" jobs due to a "proven histor[y of] extreme difficulty

---

[5] Administrative Record at 473.

interacting with others."[6]  Book found that Zirtman could:  (1) walk 2 blocks without rest or severe pain; (2) sit for 30 minutes at one time; (3) stand for 10 minutes at one time; (4) stand/walk for less than 2 hours in an 8-hour workday; (5) sit at least 6 hours in an 8-hour workday; (6) occasionally lift or carry 10 pounds or less; and (7) rarely lift or carry 20 pounds.  Additionally, Book opined that Zirtman would need to shift positions at will from sitting, standing, or walking.  Book further opined that Zirtman would need an unscheduled 5 minute break "about every 20 minutes" due to anxiety.  Lastly, Book determined that Zirtman would likely miss work more than four days per month due to her impairments or treatment for her impairments.

On August 25, 2010, Dr. Whitters re-evaluated Zirtman and her mental health concerns.  Dr. Whitters found that:

> [Zirtman] has a long history of mood instability, which has caused significant problems with her employability.  She has seen a variety of psychiatrists associated with panic attacks and bipolar disorder.  She has periods of time where she has distractability, insomnia, grandiosity, flight of ideas, hyperactivity, pushed speech and reckless behavior, but usually has manifestations of dysphoria, low energy, helplessness, hopelessness and appetite change.

(Administrative Record at 535.)  Upon examination, Dr. Whitters diagnosed Zirtman with bipolar affective disorder, type II, and PTSD.  Dr. Whitters assessed a GAF score of 55 for Zirtman.  Lastly, Dr. Whitters opined that Zirtman "seems to have ongoing employability issues in a competitive setting.  In my opinion, she continues to be disabled."[7]

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Zirtman is not disabled.  In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security

---

[6] *Id.* at 474.

[7] Administrative Record at 537.

regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Zirtman had not engaged in substantial gainful activity since July 1, 2008. At the second step, the ALJ

concluded from the medical evidence that Zirtman had the following severe impairments: bipolar II disorder with depression, anxiety disorder, obesity, type II diabetes mellitus, and hypertension. At the third step, the ALJ found that Zirtman did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Zirtman's RFC as follows:

> [Zirtman has] the residual functional capacity to perform light work . . . involving lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing/walking 6 hours in an 8 hour workday; sitting 6 hours in an 8 hour workday; ability to push and pull including the operation of hand/foot controls is unlimited within the weight restrictions cited above; occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, or crawl; and never climb ladders, ropes or scaffolds. The individual would be limited to simple, routine, repetitive work to mildly complex work; and only brief superficial contact with supervisors, co-workers, and the public.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Zirtman could not perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Zirtman could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Zirtman was not disabled.

### B. Objections Raised By Claimant

Zirtman argues that the ALJ erred in four respects. First, Zirtman argues that the ALJ failed to properly evaluate the opinions of Dr. Stenberg, a consultative examining doctor. Second, Zirtman argues that the ALJ failed to properly evaluate the opinions of her treating source, Catherine Book, a physician's assistant. Third, Zirtman argues that the ALJ failed to properly evaluate her obesity. Lastly, Zirtman argues that the ALJ's RFC assessment is flawed because the ALJ failed to properly consider the effects of her mental impairments on her physical abilities.

## *1. Dr. Stenberg's Opinions*

Zirtman argues that the ALJ failed to properly evaluate the opinions of Dr. Stenberg, a consultative examining doctor. Specifically, Zirtman maintains that the ALJ failed to include all the limitations imposed by Dr. Stenberg in her RFC assessment for Zirtman. As a result of not including all of Dr. Stenberg's limitations in her RFC assessment, Zirtman contends that the ALJ's RFC assessment is not supported by substantial evidence in the medical record as a whole. Zirtman concludes that this matter should be remanded so that the ALJ can more fully and fairly develop the record with regard to Dr. Stenberg's opinions, and fully consider those opinions in her RFC determination.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing

is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In her decision, the ALJ thoroughly addressed Dr. Stenberg's opinions as follows:

> At the request of Disability Determination Services, [Zirtman] was evaluated by Michael Stenberg, M.D. on May 26, 2009. [Zirtman] reported she was applying for disability due to mental health problems. She denied pain, but had numbness once a week. . . . She reported ability to stand for ten minutes and then her legs get tight, and she gets antsy and has to move around. She can sit through a feature length movie at home but gets anxious in a theater. . . . [Zirtman] reported rising around 6:30 a.m., taking medication, playing with her two dogs, and doing a few light household chores. She reported spending 8 to 10 hours a day on the computer, either surfing the net or buying and selling items on E-Bay. . . . Diagnoses included psychiatric disease, NOS; . . . morbid obesity; hypertension, by history; diabetes mellitus; and history of right wrist fracture. Dr. Stenberg opined [Zirtman's] impairment appeared to be psychiatric and not physical. He reiterated [Zirtman's] self-reported limits of lifting and carrying eight to 10 pounds on an infrequent basis; no impairment in ability to type on a computer or do other fine motor activities; and stand 5-10 minutes, but noted [Zirtman] stood and walked about the exam room for fifteen minutes. . . . Less weight is given to

this opinion as it appears to rely heavily on [Zirtman's] subjective complaints and self-reports of functional limitations. Furthermore, the opinion reflects greater mental health issues, which are not the area of Dr. Stenberg's expertise.

(Administrative Record at 17-18.) Additionally, the ALJ found that:

At one point or another in the record, either in forms completed in connection with the application, in medical records or other statements, [Zirtman] reported full activities of daily living including independent personal care, light housekeeping, laundry, preparing simple meals, shopping, caring for pets, reading, watching television, and spending several hours per day using the computer for e-mail, internet, and selling items on E-Bay. These activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In addition, records reflect reports of activities such as planning an engagement party for her daughter, volunteering at a special need children's center, and going bowling. Although [Zirtman] has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. [Zirtman] has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [her] favor, but the medical records reveal that the medications have been relatively effective in controlling [her] symptoms. Records reflect [Zirtman] has not followed through with recommendations by the treating sources to exercise regularly follow a diabetic diet, and check blood sugars daily. A review of [Zirtman's] work history shows that [she] worked sporadically prior to the alleged disability onset date, which raises a question as to whether [her] continuing unemployment is actually due to medical impairments. The record includes evidence suggesting that [Zirtman] is prone to exaggeration of symptoms and limitations. [Zirtman] testified to a history of kidney failure; however, medical evidence reflected only several instances of treatment for urinary tract infections. Description of pain allegations were vague and generalized. Symptoms of fibromyalgia were first suggested by [Zirtman] rather than her treating source and treatment records later report no complaints of joint or muscle pain. . . .

> In sum, the above residual functional capacity assessment is supported by the persuasive objective medical evidence, the medical opinions when afforded appropriate weight, and [Zirtman's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Zirtman's] capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 20-21.)

Here, the ALJ thoroughly reviewed Zirtman's medical records and fully considered the opinions of treating and consultative sources.[8] Specifically, the ALJ addressed Dr. Stenberg's opinions and determined that "[l]ess weight [should be] given to this opinion as it appears to rely heavily on [Zirtman's] subjective complaints and self-reports of functional limitations. Furthermore, the opinion reflects greater mental health issues, which are not the area of Dr. Stenberg's expertise."[9] The Court finds that the ALJ properly articulated her reasons for granting "little weight" to Dr. Stenberg's opinions, and for finding Dr. Stenberg's opinions to be inconsistent with the record as a whole. *See Wagner*, 499 F.3d at 848 ; *see also Wiese*, 552 F.3d at 731 (providing that specialization is factor to consider in weighing the opinions of a non-treating source); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence). Furthermore, while the ALJ may not have incorporated all of the limitations opined by Dr. Stenberg, the Court nevertheless finds that the ALJ properly considered Dr. Stenberg's opinions and addressed them in her decision. *See Wagner*, 499 F.3d at 848.

Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Zirtman's medical records, observations of treating physicians, and Zirtman's

---

[8] *See* Administrative Record at 17-21.

[9] Administrative Record at 18.

own description of her limitations in making the RFC assessment for Zirtman.[10] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 2. Book's Opinions

Catherine Book, a physician's assistant, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Book is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a physician's assistant, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the

---

[10] *See* Administrative Record at 17-21.

severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ thoroughly reviewed Book's long record of treating Zirtman, and described in detail Book's opinions and treatment strategies.[11] In weighing Book's opinions, the ALJ determined that:

> As a certified physician assistant, Ms. Book is not considered an acceptable medical source. As pointed out in 20 CFR 404.1513 and 416.913, reports about an impairment must come from acceptable medical sources. . . . Subsection (e) indicates that information from other sources might help in understanding how an impairment affects an individual's ability to work. . . . [Physician's Assistants] are not identified as acceptable medical sources, but 'other' sources, and the undersigned must rely on the opinions of the treating and consulting medical specialists who examined [Zirtman]. Ms. Book suggested the [] limitations given had been present since 1997 when she began treating [Zirtman]; however, other evidence shows [Zirtman] engaged in substantial gainful activity since 1997, demonstrating the opinion is not consistent with actual activities. Functional limitations given appear to rely heavily on [Zirtman's] self-report and subjective complaints rather than objective clinical and laboratory findings and are not supported by the treatment records. In addition, Ms. Book appeared to give an opinion regarding mental health issues; however, it does not appear she has any expertise in this area. For these reasons, the opinion of Ms. Book is accorded little evidentiary weight.

(Administrative Record at 18-19.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Book's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly

---

[11] *See* Administrative Record at 17-19.

articulated her reasons for granting "little weight" to Book's opinions, and for finding Book's opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010; *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the expertise of the source as it relates to the claimant's impairment). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Consideration of Obesity*

Zirtman argues that the ALJ failed to properly evaluate her obesity. Specifically, Zirtman argues that the ALJ failed to fully and fairly develop the record with regard to the effects of her obesity on her other limitations and her RFC assessment. Zirtman maintains that this matter should be remanded to further development of the record.

In considering this issue, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In particular, with regard to the issue of obesity, Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically

determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id*.

On the issue of obesity, the ALJ's decision provides that:

> The undersigned has given consideration to Social Security Ruling 02-1p which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairments identified.

(Administrative Record at 14.) Furthermore, in her discussion of Zirtman's medical history, the ALJ specifically addresses Zirtman's obesity at several points, including noting that "[r]ecords reflect [Zirtman] has not followed through with recommendations by the treating sources to exercise, regularly follow a diabetic diet, and check blood sugars daily."[12]

Here, the ALJ explicitly stated that she considered Zirtman's obesity in making her disability determination. While it is arguable that the ALJ could have better articulated her consideration of the effect of Zirtman's obesity on her functional limitations, the Court believes that the ALJ fully considered Zirtman's obesity in making her RFC and disability determinations in accordance with SSR 02-1p. In drawing this conclusion, the Court bears in mind that while an ALJ is required to fully and fairly develop the record, he or she "'is

---

[12] Administrative Record at 20; *see also id*. at 17-21.

not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id.* Therefore, having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to the issue of Zirtman's obesity. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 4.    RFC Assessment

Zirtman argues that the ALJ failed to properly consider the effects of her mental impairments on her physical abilities. Specifically, Zirtman argues that "[i]n assessing Ms. Zirtman's residual functional capacity and determining whether Ms. Zirtman could return to past work or other work, the ALJ failed to give any indication whatsoever that she considered the effects of [Zirtman's] mental illness on her physical limitations."[13] Zirtman maintains that this matter should be remanded for further consideration of the effects of her mental health limitations on her physical limitations, especially as they pertain to her RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'"

---

[13] Zirtman's Brief (docket number 8) at 22.

*Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In her decision, the ALJ clearly states that she considered the effect of Zirtman's mental impairments on her physical impairments. Specifically, in considering whether Zirtman's impairments meet the Listings, the ALJ stated that she "considered all of [Zirtman's] impairments individually and in combination."[14] Moreover, in determining Zirtman's RFC, the ALJ thoroughly addressed Zirtman's entire medical history, including both her mental and physical impairments.[15] The Court concludes that the ALJ properly considered Zirtman's medical records, observations of treating and non-treating physicians, and Zirtman's own description of her limitations in making her RFC assessment for Zirtman.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618 (providing that an ALJ also has a duty to develop the record fully and fairly). Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See id*. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Zirtman's consultative

---

[14] Administrative Record at 14.

[15] *See id*. at 17-21.

[16] *See id*.

examining doctor, Dr. Stenberg, and her treating source, Catherine Book. Additionally, the Court finds that the ALJ fully considered Dr. Stenberg's and Book's opinions in making her RFC assessment for Zirtman. The Court also finds that the ALJ properly considered Zirtman's obesity in making her RFC assessment for Zirtman, and fully and fairly developed the record on the issue of Zirtman's obesity. Lastly, and more generally, the Court determines that the ALJ properly considered Zirtman's medical records, observations of treating and non-treating physicians, and Zirtman's own description of her limitations in making her RFC assessment for Zirtman, including the effect of Zirtman's mental health issues on her physical limitations. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

### VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this ___9th___ day of October, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA